UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

L.C. Fields and
Barbara Fields,　　　　　　　　　　　　　　　　　　Case No.: 13-46468-wsd
　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 13
　　　　　Debtors.　　　　　　　　　　　　　　　　　Hon. Walter Shapero
_____/

L.C. Fields and
Barbara Fields,

　　　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　　　Adv. Pro. No.: 13-04588

Conseco Bank, Inc. and
CitiMortgage, Inc.,

　　　　　Defendants.
_____/

## OPINION ON VALUATION OF PROPERTY INCIDENT TO LIEN STRIP PROCEEDING

### Introduction

This matter is before the Court upon Debtors' complaint to determine the extent of the lien on their primary residence held by the second mortgagee CitiMortgage, Inc. ("Citi"). If the second mortgage was wholly unsecured at the time Debtors filed their petition, then it is not subject to the anti-modification protection of 11 U.S.C. § 1322(b)(2) and may be "stripped" and treated as unsecured. *See Lane v. W. Interstate Bancorp* (*In re Lane*), 280 F.3d 663 (6th Cir. 2002). In order for Debtors to do so, the value of the property must be found to be no more than the first mortgage balance. A trial was held, following which the parties submitted post-trial briefs and the matter was taken under advisement.

## The Amount of the Debt Owed on the First Mortgage

The Debtors' home is located at 44054 Harmony Lane in Belleville, Michigan ("the Subject Property") and is encumbered by a first mortgage of Ameriquest Mortgage Company, serviced by Provident Funding. No proof of claim has been filed regarding this first mortgage. Barbara Fields, one of the co-Debtors, testified that, as of the filing date of March 29, 2013, the amount owed on this first mortgage was $125,851.12. She testified as to that amount after referring to a "payoff document" apparently dated March 25, 2013 that was proposed as Plaintiff's Exhibit C. The Court sustained Citi's objection to the admission of that document on the grounds that it was hearsay. Mrs. Fields also testified that she has timely made all payments on the first mortgage since that March 25, 2013 date. In the absence of other evidence or argument as to the amount of the first mortgage debt, the Court deems Mrs. Fields' testimony that the debt was $125,851.12 to be sufficiently credible to warrant the conclusion for the purposes of this proceeding that such amount was owed on the first mortgage as of the filing date. The Court makes this determination notwithstanding the fact that the Debtors' Schedule D, which was filed on April 10, 2013, indicates the debt is $125,189.09. In any event, this difference does not alter the outcome.

## Valuation of the Subject Property

### The Subject Property

The Subject Property is a 49 year old "quad level" style home in average condition. It has seven total rooms, three bedrooms, one and one half bathrooms, and a finished partial basement. Its gross living area is 1,704 square feet. There had been some updates, including remodeling to the vinyl siding, windows, kitchen, and bathrooms. It was not contested that the property was well kept and well maintained, although the Debtors' appraiser, Joy Hull, indicated that she believed the interior to be "dated." It is located in proximity to Belleville Lake, in a

neighborhood with a variety of architectural styles. The Subject Property does not front the lake and has no special access rights to it.

## Debtors' Appraisal

The Debtors' appraiser, Ms. Hull, used three comparables. Comparable 1 is located at 44606 Lake Crest Drive. In her opinion, this comparable was most like the Subject Property. It is 0.03 miles from the Subject Property and sits on a lot of comparable size. It is a ranch style home that is 45 years old and, like the Subject Property, is in average condition. It has seven total rooms, three bedrooms, and two full bathrooms. Comparable 1 has a full basement that is finished (unlike the Subject Property which has a finished partial basement). For that difference, Ms. Hull made a downward adjustment to the value of Comparable 1 in the total amount of $2,000. She also admitted there was a typographical or clerical error in her report, apparently as the result of a data entry mistake. Comparable 1 is 104 square feet smaller than the Subject Property, but she inadvertently made a $1,000 *downward* adjustment to the value of Comparable 1 relative to the Subject Property, when she should have made a $1,000 *upward* adjustment. Correcting that error has a net effect of increasing the adjusted value of Comparable 1 by $2,000 and brings her corrected opinion of its adjusted sale price from $122,000 to $124,000. The sale of Comparable 1 on January 17, 2013 was as part of an "estate sale." Ms. Hull testified that this fact did not impact her opinion of its value. Citi's appraiser, Catherine Breza, countered that being part of an "estate sale" connotes such as constituting a "distress sale" that would yield a lower sale price than a voluntary sale.

Ms. Hull's Comparable 2 is located at 491 Waterbury Court, 1.27 miles from the Subject Property. It is a colonial style home and sits on a lot that is approximately 63% the size of the Subject Property's lot. It is listed in "average/inferior" condition, whereas the Subject Property is

in "average" condition. Comparable 2 is 17 years old and is 2,200 square feet. It has eight total rooms, four bedrooms, two and a half bathrooms, and a finished walkout basement. Ms. Hull reported the adjusted sale price of Comparable 2 as $108,500. Ms. Breza testified that this property was located some distance from the Subject Property, south of Belleville Lake and in a newer neighborhood that she described as "cookie cutter," i.e. comprised of houses with unoriginal designs, although she noted that quality of construction was not materially different.

Comparable 3 is located at 336 Victorian Lane, 1.12 miles from the Subject Property. It is a colonial style home in average condition and sits on a lot that is slightly smaller than that of the Subject Property. It is 17 years old and is 1,837 square feet. It has eight total rooms, four bedrooms, two and a half bathrooms, and a full but unfinished basement. Unlike the Subject Property, Comparable 3 does not have a fireplace. It is in the same so-called "cookie cutter" neighborhood as Comparable 2. Ms. Hull reported the adjusted sale price of Comparable 3 as $112,700.

Weighing all three comparables equally, Ms. Hull valued the Subject Property at $115,000, although it should be indicated that such a figure was inclusive of the above-noted error pertaining to Comparable 1. Because Ms. Hull testified that Comparable 1 was the most accurate comparable, the corrected value of her appraisal would be an amount somewhat above $115,000.

<u>Citi's Appraisal</u>

Ms. Breza's Comparable 1 is located at 11579 Dewitt Road and is 0.15 miles from the Subject Property. It is a ranch style home and sits on a lot that is slightly smaller than the Subject Property. Although it is 61 years old, it is comparable in condition and quality. It has six total rooms, three bedrooms, two bathrooms, and no basement. Its gross living area is 1,737 square feet. Although Comparable 1 had been substantially remodeled and updated, including the

kitchen, bathrooms, and heating, Ms. Breza testified that such did not warrant a conditioned adjustment. Ms. Hull testified that, in her opinion, this property was simply superior to the Subject Property because of this remodeling. Ms. Breza reported the adjusted sale price of Comparable 1 as $149,500.

Comparable 2 is located at 11584 Juniper Drive, which is 0.9 miles from the Subject Property. It is a tri level style home and sits on a lot that is over three times larger than the Subject Property's. Although it is 76 years old, it is comparable in condition and quality. It has five total rooms, two bedrooms, two bathrooms, and no basement. Its gross living area is 1,937 square feet. It has one more fireplace than the Subject Property and an exterior "pole barn" structure. Ms. Breza indicated in her report that Comparable 2 "appears to have adjusted towards the higher end of the subject properties market area." Ms. Hull testified that, in her opinion, this property was superior to the Subject Property because of substantial remodeling, including the kitchen and windows. Ms. Breza reported the adjusted sale price of Comparable 2 as $157,000.

Comparable 3 is located at 45236 Sunrise Lane, which is 0.32 miles from the Subject Property. It is a quad level style home designed by Frank Lloyd Wright and sits on a lot that is almost twice the size of the Subject Property's lot. It is 50 years old and in inferior condition compared to the Subject Property. It has seven total rooms, three bedrooms, two bathrooms, and an unfinished basement. Its gross living area is 2,333 square feet. It has one more fireplace than the Subject Property and an in-ground pool. This property had substantial remodeling, including a new roof. Ms. Breza reported the adjusted sale price of Comparable 2 as $150,000.

As requested by Citi, Ms. Breza's report also included Comparables 4 and 5, which are "for sale" listings. These comparables were not discussed by Ms. Breza in any length and do not appear to have weighed in her calculations. The Court will not consider Comparables 4 and 5.

Ms. Breza weighed Comparables 1 and 3 most heavily and concluded that the value of the Subject Property was $150,000.

Discussion

The Court deems Ms. Hull and Ms. Breza to both be qualified licensed real estate appraisers with substantially comparable qualifications and professional experience. Neither appraiser is treated as more credible than the other.

The Subject Property has a unique "quad level" architectural style and it is difficult to reduce that subjective factor to a specific dollar amount. Ms. Hull testified that style does not affect the value. Ms. Breza testified that quad level homes are suited for a particular taste and that, at the least, there needs to be an adjustment for the architectural style or the basement amenities. Given this testimony, the Court gives heavier weight to the functional attributes of the comparables, as opposed to the more subjective factor of the architectural style. The fact that a comparable may be a quad level home thus is of less relative importance than its square footage, basement style, amenities, quality, age, etc.

As to the size of the lot on which a house sits, the Court concludes that this factor should be considered somewhat material for comparables that are on a remarkably larger lot. Although Ms. Breza testified that lot size is minimally relevant to the market if the lot is less than an acre (which the Subject Property and all the comparables were), the Court finds it appropriate to conclude that a lot that is two or three times larger would, for that reason, be valued at a somewhat higher price.

The Court finds the testimony to indicate that there is a material difference in the character of the Subject Property's neighborhood and the nearby neighborhood south of Belleville Lake, in which Ms. Hull's Comparables 2 and 3 are located. That latter neighborhood, aside from being

geographically apart, was credibly described as being newer and having less diverse and original architecture. Although it is difficult to account for subjective taste, the Court concludes that the neighborhood characteristics for Ms. Hull's Comparables 2 and 3 serve to lower their value somewhat compared to the Subject Property.

Of Ms. Hull's three comparables, the Court finds Comparable 1 to be the most accurate and most indicative of the Subject Property's value. It is of similar age, size, quality, and is in close proximity to the Subject Property. The Court notes that the fact that its recent sale was part of an "estate sale" did not seem to have a drastic impact on the sale price. Given that Comparable 1 had the highest sale price of all of Ms. Hull's three comparables (despite the fact it was the oldest and had the lowest square footage), such is indicative that the sale of Comparable 1 was not a hasty liquidation sale that was dramatically below market price. The Court also finds that Ms. Hull made an inappropriately low adjustment for the fact that Comparable 1 has a finished full basement, as opposed to the Subject Property, which has a finished partial basement. As noted, she made a $2,000 downward adjustment to the value of Comparable 1 for this fact. Ms. Breza testified that amount was too low. The Court also notes that such adjustment appears to be low, particularly considering that Ms. Hull indicated at various times that (a) the difference between a finished walk-out basement and a finished partial non-walk-out basement warranted a $5,000 total adjustment; (b) the difference between two bathrooms and one and a half bathrooms warranted a "minimal adjustment" in the amount of $1,500; and (c) the lack of a fireplace warranted a $1,000 adjustment. The Court concludes that the superiority of the basement in Comparable 1 warrants a greater adjustment relative to the Subject Property and finds that the adjustment figure should have been $3,500 instead of $2,000. Making this indicated adjustment for the basement (adding $1,500 to the adjusted value of Comparable 1) and correcting the

indicated typographical error (adding $2,000) raises the adjusted sale price of Comparable 1 to $125,500. Given that Ms. Hull herself testified that Comparable 1 was the most similar one to the Subject Property, and because the Court agrees with that assessment, the Court weighs Comparable 1 most heavily of Ms. Hull's comparables.

The Court finds that Ms. Hull's Comparable 2 is somewhat distinguishable on the following grounds. It is located in the neighborhood south of the lake, is much newer than the Subject Property, and has a substantially larger square footage. Further, the fact that a $10,000 adjustment was necessary to make up for the fact that it was of poorer condition than the Subject Property weighs against it being an accurate measure of the Subject Property's value. The Court does not consider Comparable 2 as weighing substantially in its determination. Similarly, Ms. Hull's Comparable 3 is in the neighborhood south of the lake and is much newer than the Subject Property. Comparable 3 had fewer distinguishing characteristics than Comparable 2 but, as noted, differs in the neighborhood in which it is situated. The Court thus deems it appropriate to note that Comparable 3 appears materially less valuable than the Subject Property. With that in mind, the Court will afford moderate weight to Comparable 3, though substantially less than Comparable 1.

The Court finds Ms. Breza's Comparable 1 to be an accurate tool in valuing the Subject Property. Of Ms. Breza's comparables, it is most similar to the Subject Property. However, given the fact that it was 12 years older than the Subject Property (for which no adjustment was made), lacks a basement (which warranted a $9,500 upward adjustment that might be considered as being too large), and having had substantial renovations, the Court deems it appropriate to reduce Comparable 1's adjusted sale price to $141,000.

Ms. Breza did not rely heavily on Comparable 2, given that its price appears to have adjusted to the higher end of the market, so the Court will similarly not afford it any material weight.

As to Ms. Breza's Comparable 3, the Court finds it to be simply too distinguishable from the Subject Property to be afforded material weight. Its total character and value was supplemented by its in-ground pool, its substantially larger lot, and its larger square footage. The fact it was designed by Frank Lloyd Wright is noteworthy, particularly because no adjustment was made for such and there was no evidence as to how much that would affect its value. Although Ms. Breza indicated that she weighed Comparable 3 heavily, such characteristics make it so unlike the Subject Property that its adjusted value is not an accurate indication or reflection of the Subject Property's value.

In sum, the Court considers most relevant (a) Ms. Hull's Comparable 1, with a corrected adjusted value of $125,500, affording it the heaviest weight; (b) Ms. Hull's Comparable 3, with an adjusted value somewhere in excess of $112,700, affording it moderate weight; and (c) Ms. Breza's Comparable 1, with a corrected adjusted value of $141,000, affording it heavy weight. Considering the totality of the evidence and affording what the Court determines to be the appropriate weight, the Court finds that the value of the Subject Property for the purposes of this proceeding is $130,000. A substantial factor weighing in this determination is that Ms. Hull's Comparable 1, which she testified is most like the Subject Property, has a corrected adjusted value that itself nearly exceeds the debt owed on the first mortgage, $125,851.12, and is indicative that the Debtors have not met their burden of proof.

The Court's valuation exceeds the indicated first mortgage balance and results in Citi's second lien being partially secured. This conclusion precludes Debtors' ability to strip Citi's lien in this action. Citi shall present an appropriate order consistent with this opinion.

**Signed on May 19, 2014**

                                                **/s/ Walter Shapero**
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**